IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

ANDRIA DONNELLAN,
an incompetent adult; and
BRENDA DONNELLAN,
as legal guardian, etc.,

    Plaintiffs,

v.                                          Civil Action No. 2:08-CV-93
                                                             (BAILEY)

UNITED SUMMIT CENTER,
a West Virginia Corporation;
MARTHA V. WALKER, SECRETARY
OF THE WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN
RESOURCES,
a West Virginia State Agency;
COORDINATING COUNCIL FOR
INDEPENDENT LIVING,
a West Virginia Corporation; and
WEST VIRGINIA EMS TECHNICAL
SUPPORT NETWORK,
a West Virginia Company,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEPARTMENT OF HEALTH AND HUMAN RESOURCES'S**
**MOTION TO DISMISS**

Currently pending before the Court is Defendant Department of Health and Human Resources's Motion to Dismiss For Failure to State a Claim Pursuant to Rule 12(b)(6) [Doc. 37], filed March 9, 2009. Plaintiffs responded to Defendant's Motion to Dismiss on March 23, 2009 [Doc. 40], and Defendant replied on July 1, 2009 [Doc. 45]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below,

1

concludes that Defendant's Motion to Dismiss [Doc. 37] should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This action arises from a dispute between the legal guardian of an incompetent adult and her health care providers. Specifically, Andria Donnellan ("Andria"), a recipient of Medicaid's Mental Retardation Developmental Disability Waiver (Title XIX) services, and Brenda Donnellan ("Brenda"), brought this action in the Circuit Court of Lewis County, West Virginia, against the United Summit Center ("USC"), the medical center providing mental health, assisted living, and other services in Andria's home. In addition to USC, the plaintiffs named as defendants the case management agency, the advocacy agency, and the Department of Health and Human Resources ("DHHR"). The plaintiffs allege that Defendants have violated the provisions of Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*

The Complaint [Doc. 36], which the plaintiffs amended subsequent to removal[1], now contains five claims for relief: (1) a writ of mandamus that DHHR force USC's compliance with the laws governing the delivery of Title XIX services; (2) an injunction that USC comply with the laws governing the delivery of Title XIX services; (3) monetary relief from all defendants based upon their negligent and/or willful, wanton, and recklessness conduct; (4) monetary relief from all defendants based upon a claim of intentional infliction of emotional distress; and (5) monetary relief from all defendants based upon a 42 U.S.C. § 1983 civil rights claim. (See [Doc. 36] 43-50).

---

[1] Removal is premised upon federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441.

With regard to DHHR, the plaintiffs state two sets of allegations. (See [Doc. 36] at 23-26). First, the plaintiffs claim that DHHR has not enforced USC's compliance with governing law. (See [Doc. 36] at ¶¶ 46-48). Second, the plaintiffs assert that DHHR provides inadequate administrative remedies for grievances. (See Id. at ¶ 49). As relief for these allegations, the plaintiffs request a writ of mandamus requiring DHHR to ensure USC: (1) gives Brenda unlimited daily access to Andria's medical records, (2) implements no plan of care inconsistent with Brenda's wishes, (3) implements no plan of care inconsistent with orders of Andria's doctors, (4) follows the Individualized Program Plan ("IPP"), and (5) refrains from committing any such errors or omissions in the future. (Id. at 43-44). In addition to a writ of mandamus, the plaintiffs request monetary relief from all defendants premised upon: (1) negligence and/or recklessness, (2) intentional infliction of emotional distress, and (3) § 1983 civil rights violations.

On March 3, 2009, DHHR filed the pending Motion to Dismiss [Doc. 37], claiming that the plaintiffs have failed to state a claim upon which relief may be granted against it. With regard to the writ of mandamus, DHHR argues that the allegations are insufficiently specific as it pertains to its own actions or omissions. (See [Doc. 38] at 5-7). As for the three claims for monetary relief, DHHR asserts that, as a state agency, it is immune from a suit seeking such relief. (See Id. 8-16). In their response [Doc. 40], filed March 23, 2009, the plaintiffs argue that "USC's failings are DHHR's failings – and this has been expressly alleged in the Amended Complaint." ([Doc. 40] at 3, ¶ 40). Moreover, the plaintiffs argue that DHHR has waived its immunity by consenting to removal. (Id. at 4, ¶ 4). On July 1, 2009, DHHR filed a reply [Doc. 45], arguing that a writ of mandamus would be an inappropriate remedy because the plaintiffs have failed to allege that they have a clear

federal right to the relief requested. (See [Doc. 45] at 9-11). Also, with regard to the claims for monetary relief, DHHR raises the deficiency of each claim's substantive basis and again asserts immunity. (See Id. at 4).

## DISCUSSION

**I. Standard**

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990). "[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." ***Johnson v. Mueller***, 415 F.2d 354 (4th Cir. 1969).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, — U.S. —, 129 S.Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

As for sovereign immunity, the Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States" by citizens of another State, U.S. Const., Amdt. 11, and (as interpreted) by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). Thus, as a general proposition, the doctrine of sovereign immunity bars suit against a state. However, the Supreme Court has articulated three narrow exceptions. First, a state can waive its immunity. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985) ("[I]f a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action."). Second, Congress may, in particular circumstances, abrogate a state's immunity. *See Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) (holding that Congress can make states liable to suit in federal court pursuant to statutes adopted under § 5 of the Fourteenth Amendment). Third, a suit may proceed against a state as long as it is directed at a state official and requests prospective relief. *See Ex parte Young*, 209 U.S. 123 (1908) (holding that the Eleventh Amendment does not bar suits against state officers to enjoin violations of federal law).

## II. Analysis

### A. Writ of Mandamus

DHHR argues that the plaintiffs have failed to state a claim upon which a writ of mandamus may be issued. This Court disagrees.

A writ of mandamus may issue only where three elements co-exist: (1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available.

5

*First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135 (4th Cir. 1988). An application of this standard to the plaintiffs' request for a writ of mandamus is outlined below.

### 1. Unlimited Daily Access to Medical Records

The first request within the plaintiffs' application for a writ of mandamus is that DHHR ensure USC provides Brenda with unlimited daily access to Andria's medical records. Upon an application of the three-part test for issuance of a writ of mandamus, the Court finds that the plaintiffs have sufficiently stated a claim for this relief.

#### i. Plaintiffs' Clear Right to Relief

To satisfy the first element, the plaintiffs must allege a clear right to Brenda's unlimited daily access to Andria's medical records. The Court finds the allegations with regard to the first element sufficient.

According to the Amended Complaint, "USC refused, beginning December 2007, to permit [Brenda's] access to [Andria's] medical, program and behavior documentation even though [Brenda] is responsible for medical and other decisions for [Andria] and, since [Andria] is non-verbal, the documentation provides the only means [Brenda] has for knowing what is going on." ([Doc. 36] at 18, ¶ 33). Brenda's responsibility stems from her position on Andria's interdisciplinary team, which serves the purpose of developing and periodically reviewing Andria IPP. *See* W.Va. C.S.R. § 64-59-6.8-12.

In further support of Brenda's claim to access Andria's medical records, the plaintiffs cite to Section DD-26 of the Title XIX MR/DD Waiver Program Manual, which governs documentation and record keeping with regard to Andria's treatment. (See [Doc. 36] at 38). Specifically, Section DD-26 requires that the following records be stored at Andria's

residence: (1) current complete IPP; (2) current behavior support plans; (3) activity schedule; (4) current doctor's orders; (5) nurse's notes; (6) staff notes; (7) current MARs; (8) copies of other pertinent medical or evaluative information relevant to treatment; and (9) monthly summary of medications, doctor's orders, nursing concerns, progress, and problems. *See* Title XIX MR/DD Waiver Program Manual, Section DD-26. The plaintiffs claim that Section DD-26 has been violated in that USC has, *inter alia*, failed to make available in Andria's home a current IPP or any progress notes. (See [Doc. 36] at 20, ¶ 34i-j.)

Finally, the plaintiffs cite in support of this access 42 C.F.R. § 483.440, which also governs access to Title XIX Waiver Program documentation. (See Id. at 38-43). Specifically, in requiring that the IPP identify the location where program strategy information can be found, § 483.440(c)(6)(ii) mandates that such information "must be accessible to any person responsible for implementation" of the IPP. Likewise, § 483.440(d)(2) requires that an active treatment schedule outlining the current active treatment program be "readily available for review by relevant staff."

Upon considering Brenda's status as Andria's legal guardian, Brenda's position on Andria's interdisciplinary team, the Waiver Program Manual, and the above-cited federal regulations, this Court finds that the plaintiffs have sufficiently stated a claim for a clear right to DHHR ensuring USC provides Brenda with unlimited daily access to Andria's medical records.

### ii. DHHR's Clear Duty

To satisfy the second element, the plaintiffs must allege that DHHR has a clear duty to ensure Brenda's unlimited daily access to Andria's medical records. The Court finds the

7

allegations with regard to the second element sufficient.

In implying a duty on the part of DHHR, the plaintiffs assert that "DHHR has been remiss in failing to compel USC to strictly follow all state and federal regulations, including its own Waiver Manual . . . in providing care to Andria . . .." ([Doc. 36] at 43, ¶ 84). The applicable state regulations provide for both internal enforcement by the secretary of DHHR and external enforcement by individual action. *See* W.Va. C.S.R. § 64.59-2.2. This provision indicates that the West Virginia State Legislature has charged DHHR with the duty of administering Title XIX Waiver Program services. Because a crucial component to providing these services includes the implementation of the IPP, this Court finds that the plaintiffs have sufficiently stated a claim that DHHR has a clear duty to ensure Brenda, an interdisciplinary team member, has unlimited daily access to Andria's medical records.

### iii. No Other Adequate Remedy

To satisfy the third element, the plaintiffs must allege that a writ of mandamus is the only adequate remedy available to provide Brenda with unlimited daily access to Andria's medical records. The Court finds the allegations with regard to the third element sufficient.

In the Amended Complaint, the plaintiffs allege extensively, and with great detail, that both DHHR and USC have been uncooperative and unresponsive in answering the plaintiffs' grievances with regard to this request and others. (See [Doc. 36] at 21-22, 24-26). Thus, this Court finds that the plaintiffs have sufficiently stated a claim that the only adequate remedy available to ensure Brenda's unlimited daily access to Andria's medical records is a writ of mandamus. Therefore, because the plaintiffs have stated sufficient allegations that all three elements co-exist, their claim for a writ of mandamus shall

8

**PROCEED** insofar as it requests DHHR to ensure USC provides Brenda with unlimited daily access to Andria's medical records.

### 2. No Plan of Care Inconsistent with Guardian's Wishes

The second request within the plaintiffs' application for a writ of mandamus is that DHHR ensure USC implements no plan of care inconsistent with Brenda's wishes. Upon an application of the three-part test for issuance of a writ of mandamus, the Court finds that the plaintiffs have *not* sufficiently stated a claim for this relief.

#### i. Plaintiffs' Clear Right to Relief

To satisfy the first element, the plaintiffs must allege a clear right to a plan of care not inconsistent with Brenda's wishes. The Court finds the allegations with regard to the first element insufficient.

In support of this request, the plaintiffs cite the state regulation governing a Title XIX Waiver Program recipient's right to refuse treatment. W.Va. C.S.R. § 64-59-8. However, this regulation fails to support the plaintiffs' request that DHHR ensure USC implements *no* plan of care inconsistent with Brenda's wishes. Reading the regulation as a whole indicates that a client's refusal of treatment is only the beginning, not the end, of the process. Specifically, differences should be resolved through informal discussion or negotiation. If not resolved, the client must then follow provisions of the client grievance procedure. *See* § 64-59-8.2. Finally, the regulation even provides for a circumstance under which treatment may be imposed over the objections of the client. *See* § 64-59-8.5. Thus, the Court finds no authority in this regulation or any other cited in the Amended Complaint to state a claim that Brenda has a clear right to DHHR ensuring USC implements

9

no plan of care inconsistent with her wishes.

Because the plaintiffs have failed to state sufficient allegations with regard to the first element, this Court finds a discussion of the second and third unnecessary. Therefore, the Court **DISMISSES** the plaintiffs' claim for a writ of mandamus insofar as it requests DHHR to ensure USC implements no plan of care inconsistent with Brenda's wishes.

### 3. No Plan of Care Inconsistent with Doctor's Orders

The third request within the plaintiffs' application for a writ of mandamus is that DHHR ensure USC implements no plan of care inconsistent with the orders of Andria's doctors. Upon an application of the three-part test for issuance of a writ of mandamus, the Court finds that the plaintiffs have *not* sufficiently stated a claim for this relief.

#### i. Plaintiffs' Clear Right to Relief

To satisfy the first element, the plaintiffs must allege a clear right to a plan of care not inconsistent with the orders of Andria's doctors. The Court finds the allegations with regard to the first element insufficient.

The plaintiffs have cited no authority, state or federal, for their claim that USC must implement a plan of care that comports with all orders of any doctor with whom Brenda may consult regarding Andria's condition. Such an absolute claim finds no support in state or federal regulations pertaining to the provision of Title XIX Waiver Program services. As DHHR argues in its Reply, "the consulting doctors [Brenda] retains may not dictate the plan of care to the health care providers at U.S.C." ([Doc. 45] at 11).

Because the plaintiffs have failed to state sufficient allegations with regard to the first element, this Court finds a discussion of the second and third unnecessary. Therefore, the

Court **DISMISSES** the plaintiffs' claim for a writ of mandamus insofar as it requests DHHR to ensure USC implements no plan of care inconsistent with the orders of Andria's doctors.

### 4. Compliance with the Individualized Program Plan

The fourth request within the plaintiffs' application for a writ of mandamus is that DHHR ensure USC's compliance with the Individualized Program Plan. Upon an application of the three-part test for the issuance of a writ of mandamus, this Court finds that the plaintiffs have sufficiently stated a claim for this relief.

#### i. Plaintiffs' Clear Right to Relief

To satisfy the first element, the plaintiffs must allege a clear right to DHHR ensuring USC follows the IPP. The Court finds the allegations with regard to the first element sufficient.

An IPP is defined as "[a] master plan which is a written, individualized plan specifically tailored to individual needs, including a complete thorough review of the client's needs, strengths, weaknesses, response to initial interventions and prognosis for resolution of acute symptoms, and other components . . .." W.Va. C.S.R. § 64-59-3.7.

Here, the plaintiffs allege that USC has, *inter alia*, "[f]ailed to provide services authorized by IPP – e.g.[,] swimming twice weekly, other exercise, [physical therapy], OT, speech therapy, PECS, skills training programs, Day Program twice weekly, including Wednesday beginning at 9:00 to join with her peers in preparing the day's lunch." ([Doc. 36] at 5, ¶ 22a). The Court finds this allegation sufficient to state a claim for a clear right to DHHR ensuring USC follows the IPP.

### ii. DHHR's Clear Duty

To satisfy the second element, the plaintiffs must allege that DHHR has a clear duty to ensure USC follows the IPP. Again, in considering that DHHR is the focus of the enforcement mechanism provided in the applicable state regulations, the Court finds that the plaintiffs have sufficiently stated a claim that DHHR has a clear duty to ensure USC follows the IPP.

### iii. No Other Adequate Remedy

To satisfy the third element, the plaintiffs must allege that a writ of mandamus is the only adequate remedy available to ensure USC's compliance with the IPP. Due to the failure of DHHR and USC to provide adequate internal remedies, as alleged in the Amended Complaint, the Court finds that the plaintiffs have sufficiently stated a claim that the only adequate remedy available to ensure USC follows the IPP is a writ of mandamus. Therefore, because the plaintiffs have stated sufficient allegations that all three elements co-exist, their claim for a writ of mandamus shall **PROCEED** insofar as it requests DHHR to ensure USC follows the IPP.

### B. Claims for Monetary Relief

In addition to a writ of mandamus, the plaintiffs request monetary relief premised upon: (1) negligent and/or reckless conduct of all defendants, (2) intentional infliction of emotional distress as a result of the defendants' collective conduct, and (3) a § 1983 civil rights claim directed at all defendants. Plaintiffs argue that DHHR has waived its immunity to these claims for monetary relief by consenting to removal. This Court disagrees. As a

12

result, DHHR's immunity bars all three claims as they relate to DHHR.[2]

In *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002), the Supreme Court addressed, but did not fully resolve, the issue of whether the removal of a case from state to federal court constitutes a waiver of sovereign immunity. Though the Court ruled that the state's choice in *Lapides* to remove the case to federal court was a waiver of its sovereign immunity, it appeared to limit the holding:

> It has become clear that we must limit our answer to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings.

*Lapides*, 535 U.S. at 617.

Since *Lapides*, the Fourth Circuit, in reversing a district court for equating removal with waiver, provided guidance for applying the principle articulated in *Lapides*:

> We believe the district court read the rule of *Lapides* too broadly. *Lapides* addresses whether a state that removes an action to federal court having already consented to suit in its own courts can invoke Eleventh Amendment immunity; it does *not* resolve whether a state that has not consented to suit in its own courts maintains either the broad concept of sovereign immunity or Eleventh Amendment immunity upon voluntarily removing a case to federal court.

*Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005); *see also* *Morris v. Canterbury*, No. 2:05-0001, 2005 U.S. Dist. LEXIS 45950, at *3 (S.D. W.Va. May 2, 2005)

---

[2]The abrogation and *Ex parte Young* exceptions are inapplicable to save these claims. First, due to an insufficient indication of an express congressional desire to make state governments liable under 42 U.S.C. § 1983, the Supreme Court has held that § 1983 does not abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332 (1979). Second, because the plaintiffs seek compensatory damages as their monetary relief, *Ex parte Young* is inapplicable. *See Edelman v. Jordan*, 415 U.S. 651 (1974) (holding that the Eleventh Amendment prevents a federal court from awarding damages to compensate past injuries when those damages will be paid by the state treasury).

(recognizing the limited holding of *Lapides* and the Fourth Circuit's refusal to extend it).

In the instant case, DHHR consented to removal from state to federal court. However, unlike in *Lapides*, DHHR had not consented to suit in state court before consenting to removal. Thus, the Court finds that DHHR's consent to removal did not constitute a waiver of its immunity. Therefore, all three claims for monetary relief must be **DISMISSED** as they pertain to DHHR.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant DHHR's Motion to Dismiss [Doc. 37] should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** October 6, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE